IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BOUBACAR KEITA,

Petitioner,

vs.

WARDEN, MCCOOK DETENTION CENTER, TODD BLANCHE, Acting U.S. Attorney General; MARKWAYNE MULLIN, Secretary of Homeland Security; and DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director of U.S. Immigration & Customs Enforcement;

Respondents.

**8:26CV366**

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Boubacar Keita's Petition for a Writ of Habeas Corpus (Filing No. 1).[1] Keita, a noncitizen facing removal from the United States, is detained by U.S. Immigrations and Customs Enforcement and seeks immediate release from the custody of the Department of Homeland Security and ICE at McCook Detention Center in McCook, Nebraska. He originally argued that his prolonged detention during the pendency of his appeal violated his due process rights. (Filing No. 1). Keita is now additionally alleging that his due process rights were violated when he was re-detained after being released on recognizance. (Filing No. 13). Keita asks the court to outright release him, or in the alternative order an individualized bond hearing. For the reasons set forth below, his petition will be granted in part and the court will order that he receive a bond hearing.

## BACKGROUND

[1] Ketia petitioned the court to re-open and reconsider his Petition, which was granted. (Filing No. 13, Filing No. 16)

Keita is a native and citizen of Guinea[2]. He fled from Guinea after the military junta "victimized and tortured" him and his cousins and killed his uncle. (Filing No. 6-3 at 6). He entered the United States near Otay Mesa, California in February 2024. (Filing No. 1 at 11). U.S. Immigration and Customs Enforcement (ICE) detained him at the border, initiated removal proceedings against him, and released him into the country on an order of release on recognizance. (Filing No. 6 at 3-4, Filing No. 6-2). Keita later applied for asylum and for withholding of removal.

In November 2025, Keita went to a scheduled check-in appointment at a U.S. Immigrations and Customs Enforcement (ICE) office in Grand Forks, North Dakota. (Filing No. 6 at 4). ICE conducted a routine criminal history check and found that Keita had been convicted in Cass County, North Dakota for driving without liability insurance. (Filing No. 6 at 4). An immigration warrant was issued based upon "the pendency of ongoing removal proceedings" and Keita's lack of immigration status. (Filing No. 13 at 52). Keita was arrested and taken into custody pending the remainder of his immigration proceedings. (Filing No. 6 at 4). Keita's order of recognizance was not revoked at or around the time of his re-detention. (Filing No. 13 at 51). Keita was transferred to the McCook Detention Center" in McCook, Nebraska, where he remains. (Filing No. 1 at 11).

Keita alleges that he unsuccessfully sought release on bond. (Filing No. 1 at 12). The Federal Respondents initially submitted a declaration from Deportation Officer Steven Draves stating that Keita "never requested a bond hearing." (Filing No. 6 at 4). This court sought clarification and the Federal Respondents explained that although Keita indicated at a hearing that he would request a bond hearing, no bond request appears on record[3]. (Filing No. 19 at 4).

Meanwhile, Keita's removal proceedings continued. In February 2026, an immigration judge ordered that Keita be removed to Uganda under the Asylum Cooperative Agreement with Uganda. (Filing No. 6-6). Keita appealed that decision (Filing No. 6-7), and his appeal remains pending. (Filing No. 6 at 4).

---

[2] Although a previous filing stated that Keita is a native and citizen of Equatorial Guinea, (Filing No. 1 at 11), Keita has clarified that he is a native of Guinea. (Filing No. 13 at 2).

[3] With regard to Keita's request for a bond redetermination hearing, Deportation Officer Seth Patrin states in his affidavit as follows: "Petitioner never requested a bond hearing. At his November 25, 2025 hearing, our notes indicate that the Petitioner chimed in that he would submit a bond request. [Department of Homeland Security] indicated he was [Entry Without Inspection] and Hurtado controlled. The [Immigration Judge] noted DHS's position for the record but advised that the Petitioner's counsel could file a bond determination request. No bond request thereafter appears on record and no bond case was ever opened. At the Petitioner's next hearing on December 17, 2025, there were technical issues and the Petitioner could not hear the IJ at all. After numerous people tried to fix the problem over an extended period of time, the IJ ultimately said the matter would need to be reset and the hearing was concluded." (Filing No. 19 at 4).

Keita first petitioned this Court for habeas relief in February 2026. He alleged his detention was unlawful in that he "[was] currently being mandatorily detained under [8 U.S.C. § 1225(b)(2)] and ha[d] not been afforded a bond hearing." *Boubacar v. Blanche,* 2026 WL 972708, at *1 (D. Neb. Apr. 10, 2026). He also argued his detention without a bond hearing "violate[d] well-established principles of procedural due process." *Id.* The Court rejected both arguments and denied Keita's petition. In doing so, the Court applied *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) to the statutory arguments Keita had made, and determined that Keita's procedural due process claim was also foreclosed. *See Boubacar*, 2026 WL 972708, at *2-3.

Keita again sought habeas relief in July 2026. (Filing No. 1). In his second petition, he sought immediate release or a bond hearing because he alleged that his "prolonged" detention during the pendency of his appeal violates his due process rights. (Filing No. 1 at 14). Specifically, he says his "continued detention is no longer reasonable in light of its duration and the absence of any meaningful indication that his immigration proceedings will conclude in the immediate future." (Filing No. 1 at 15). The Court denied relief with respect to this prolonged detention claim. *Keita v. Warden*, 2026 WL 2349948 (D. Neb. Aug. 13, 2026). The order relied on Eighth Circuit precedent that detention during deportation proceedings is constitutionally valid and that "[d]ue process imposes no time limit on detention pending deportation[.]" *Banyee v. Garland*, 115 F.4th 928, 930 (8th Cir. 2024). *See also Demore v. Kim*, 538 U.S. 510, 523 (2003).

In September 2026, Keita then successfully moved for the Court to reopen and reconsider his second Petition for Writ of Habeas Corpus. (Filing No. 14). In his motion, he alleges for the first time that he is presently being held pursuant to 8 U.S.C. § 1226(a) because he emphasized that prior to his arrest, he had been released into the community on an order of recognizance, and was situated differently than the petitioner in *Avila*. (Filing No. 13, Filing No. 6-2). He pointed out that his order of recognizance was never revoked and remained current. (Filing No. 13 at 18).

The Court granted Keita's Motion to Reopen and Reconsider his Writ of Habeas Corpus Petition and requested additional information from the Federal Respondents. (Filing No. 14, Filing No. 16). The Federal Respondents submitted a form showing that, following Keita's Petition, his Order of Recognizance was marked as cancelled on September 18, 2026 with a check box indicating that Keita "failed to comply with the conditions of release." (Filing No. 19-1). The cancellation order is signed by ICE Supervisory Detention and Deportation Officer Quintin Erdman. (Filing No. 19-1). The Federal Respondents further clarified that the formal revocation of the Order of Recognizance was executed

"to ensure clear administrative standing." (Filing No. 19 at 5). The Federal Respondents also indicated they did not think a hearing was necessary. The court agrees that a hearing is not necessary and considers the matter submitted on the parties' written arguments. *See* 28 U.S.C. § 2243.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Keita bears the burden to show his custody is unlawful. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

As an initial matter, the court's previous order regarding Keita's Petition for Writ of Habeas Corpus, remains in effect as to whether Ketia's "prolonged detention" during the pendency of his appeal violates due process. (Filing No. 11); *See* *Banyee v. Garland*, 115 F.4th 928, 930 (8th Cir. 2024). The Court now turns to Keita's new claim regarding his release on recognizance. Keita claims that his release on recognizance was never revoked prior to his re-detention in November 2025, and that his re-detention violated his due process rights because he was not afforded meaningful notice or an opportunity to challenge the implicit decision[4] to revoke his order of release on recognizance. (Filing No. 13 at 18-20). The court finds that Keita has carried the burden to show that his custody is unlawful.

The Federal Respondents repeat their prior arguments that Keita is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), relying on *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). (Filing No. 4 at 3, Filing No. 17 at 2). This court previously agreed with this statutory argument. *Boubacar v. Blanche*, No. 8:26CV59, 2026 WL 972708 (D. Neb. Apr. 10, 2026). But upon review of Keita's arguments that are being made for the first time, and the ever-changing law in this area, this case is unlike *Avila* in an important way. *Avila* involved a noncitizen who were not detained at the border and entered the country "without inspection or admission." 170 F.4th at 1132. Here, Keita was

[4] The Federal Respondents have advised that ICE policy considers an immigration arrest warrant an "operational revocation of prior release terms." (Filing No. 19 at 5).

detained at the border and released on an order of recognizance on a Form I-220A under 8 U.S.C. § 1226(a)(2)(B). (Filing No. 19-1). The government took Keita back into custody without giving him an opportunity to be heard. It now claims that Keita is subject to mandatory detention under § 1225, even though his order of recognizance was issued under § 1226. The Federal Respondents' position that § 1225 applies to re-detention even after a noncitizen has been released from custody has been often rejected in this District. See e.g. *Antonio-Andres v. Mullin*, No. 8:26CV444, 2026 WL 2546997 (D. Neb. Aug. 28, 2026); *Chirinos-Pirona v. Mullin*, No. 8:26CV388, 2026 WL 2455164 (D. Neb. Aug. 21, 2026); *Silva v. Warden, Lincoln Cnty. Det. Ctr.*, No. 8:26-CV-131, 2026 WL 926725 (D. Neb. Apr. 6, 2026). Nothing in *Avila* permits the government to effectively recategorize immigrants who were conditionally paroled[5] under § 1226(a)(2)(B). *Id.*

The Due Process Clause prohibits the government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. It applies to all "'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001). Procedural due process claims "are examined under a two-part test: 'whether there exists a liberty or property interest which has been interfered with by the government'; and 'whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Cent. Specialties, Inc. v. Large*, 482 F. Supp. 3d 886, 895 (D. Minn. 2020), *aff'd,* 18 F.4th 989 (8th Cir. 2021) (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

In the immigration context, however, "the nature of [due process] protection may vary depending upon [immigration] status and circumstance." *Id.* Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.,* 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306, (1993)). But because "Congress may make rules as to aliens that would be unacceptable if applied to citizens," the government "has more flexibility when dealing with immigration." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (quoting *Demore v. Kim*, 538 U.S. 510, 526 (2003)).

Here, even allowing the government the flexibility it is entitled to in this area, the Court concludes that Keita did not receive the process he was due. First, he had a liberty interest in his continued release on his own recognizance in the community. *See Ferrufino Guerrero v. Mullin*, No. 4:26CV3146, 2026 WL 1679263, at *4 (D. Neb. June 10, 2026). To determine whether a conditional

[5] "It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115.

release in the immigration context creates a protected liberty interest, at least one circuit has "resolved the issue 'by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (citation omitted). In *Morrissey v. Brewer*, the Supreme Court found that parolees enjoy many "of the core values of unqualified liberty" and build their lives upon "at least an implicit promise that parole will be revoked only if [they] fail[ ] to live up to the parole conditions." 408 U.S. 471, 482 (1972). See also *Young v. Harper*, 520 U.S. 143, 147-49 (1997) (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context). Given the "grievous loss" caused by revocation of parole, the court held that those released on criminal parole were entitled to due process before having their parole revoked. *Morrissey v. Brewer*, 408 U.S. 471. *See also Silva v. Warden, Lincoln Cnty. Det. Ctr.*, 2026 WL 926725, at *2 (D. Neb. Apr. 6, 2026) ("A noncitizen conditionally paroled into the United States is analogous to a criminal parolee"). This Court has applied this approach in other cases involving immigration parole and found other petitioners had a liberty interest in continued release. *Chirinos-Pirona v. Mullin*, 2026 WL 2455164 (D. Neb. Aug. 21, 2026); *Ferrufino Guerrero v. Mullin*, 2026 WL 1679263 (D. Neb. June 10, 2026); *Sandhu v. Mullin*, 2026 WL 1146643 (D. Neb. Apr. 28, 2026).

As to the process owed in connection with re-detention, as a noncitizen conditionally paroled into the United States, Keita has a liberty interest that "at the very least, entitles him to the procedures authorized by Congress." *Singh v. Noem*, 824 F. Supp. 3d 1197, 1210 (D.N.M. 2026); *Compare Antonio-Andres v. Mullin*, 2026 WL 2546997, at *2 (D. Neb. Aug. 28, 2026) (Applying *Mathews v. Eldridge*, 424 U.S. 319 (1976) and finding that re-detention of immigration noncitizen parolee without the opportunity for bond violates due process rights). Release under § 1226(a) "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk," and a noncitizen on release has a strong interest in remaining at liberty unless they no longer meet those criteria. *Martinez v. Mullin*, 2026 WL 2111747, at *3 (C.D. Cal. July 20, 2026). But because the Federal Respondents have asserted that Keita is subject to mandatory detention under § 1225(b)(2)(A), he has not received those procedures, including the chance to request a bond redetermination before an immigration judge.

In the context of this case, Keita's liberty interest is rooted in his conditional release pursuant to 8 C.F.R. § 1236.1(c)(8). Under that regulation, immigration officers may exercise discretion to release certain noncitizens from custody if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is

"likely to appear for any future proceeding." It follows that for Keita to have been released, immigration officers must have already made an individualized determination as to the appropriateness of detention. *Id*.; see *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) (reviewing statutory and regulatory basis for due process liberty interest). To revoke prior release under §1226(a), some process is required. See *Betancourth v. Tate*, 822 F. Supp. 3d 762, 768 (S.D. Tex. 2026). ICE is required to "engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Id*. (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d at, 492–93. At minimum, there must be "an individualized determination that release is no longer appropriate under the terms of that prior release." *Id.* Since civil immigration detention under 1226(a) is keyed to preventing flight and protecting against danger to the community, Keita has a liberty interest in remaining at liberty unless he no longer meets those criteria. See *Martinez v. Mullin*, 2026 WL 2111747 (C.D. Cal. July 20, 2026).

In this regard, the Second Circuit has noted that although due process does not entitle a noncitizen parolee to the "full range of rights" he or she would have in a criminal prosecution, it was comparable to criminal postures such as supervised release or release on probation, where "an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing" *Villiers v. Decker*, 31 F.4th 825, 833 (2d Cir. 2022).

Keita's order of recognizance required him to comply with certain conditions, including that he "must not violate any local, State, or Federal laws or ordinances." (Filing No. 19-1). Even if Keita's conviction for driving without insurance was a violation of this condition and cause for ICE revoke his conditional parole, there is no evidence that Keita was ever given notice or a meaningful opportunity to respond, and the government did not establish by clear and convincing evidence[6] that Keita is a flight risk or a danger to the community. Keita's immigration arrest warrant and Notice to Appear do not reference the conditions of Keita's release. (Filing No. 13 at 48-51). After Keita was re-detained without a bond hearing in November 2025, the order of recognizance was not formally cancelled until September 18, 2026, which was two days after the Court granted Ketia's motion to re-open and reconsider his Writ of Habeas Corpus Petition. (Filing No. 14; Filing No. 19-1). There is nothing in the record to show that Ketia received process at the time his order of recognizance was cancelled.

[6] "As a general matter, the Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926 (D. Colo. 2025).

(Filing No. 19-1). Due process requires more. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

Further, 8 U.S.C. § 1226(b) provides additional requirements on the government to "revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." *Id.* A corresponding regulation provides:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9). There is no question the statute gives the government "immense discretion." *Singh v. Noem*, 824 F. Supp. 3d at 1212. However, the act of revoking a bond or parole is a discretionary act and must be made by a listed officer in the above regulation. In this case, the evidence suggests that the cancellation of the order of recognizance was not performed until around 10 months after Keita's arrest, and it is not clear whether the listed officer on the cancellation order was one of those listed in the regulation[7] and exercised any discretion at that time. (Filing No. 19-1).

In summary, ICE officers arrested Keita without any meaningful opportunity to contest his re-detention. Although Keita may have violated the conditions of his release, there is no evidence that ICE performed an individualized assessment of whether he was a flight risk or danger to the community. (Filing No. 19). Keita never had a bond hearing, although he had indicated he would like one. (Filing No. 19, ¶ 15). After being detained for almost a year, ICE attempted to officially cancel his release on recognizance. (Filing No. 19-1). Even if ICE followed some procedures when the release was eventually cancelled, it came too late to cure the constitutional violations stemming from failing to follow its own regulatory requirements. See e.g. *Caisa Telenchana v. Hermosillo*, 2026 WL 696806 (W.D. Wash. Mar. 12, 2026) (finding that implementing regulations were not followed before revoking noncitizen's parole where there was no evidence that noncitizen's traffic violation led immigration officials to determine he posed a risk of flight or danger to the community).

---

[7] The Immigration Officer is indicated to be an SDDO after his initials, which stands for Supervisory Detention and Deportation Officer. This does not appear to be one of the individuals listed in the regulation.

The Court finds that Keita has shown a liberty interest in his continued release on his own recognizance, and that revocation of his conditional parole and his re-detention—particularly without notice of the revocation or an opportunity to respond—fell short of the process he is due. Under these circumstances, and in light of other developments in Keita's removal case, it is necessary for an immigration judge to hold a hearing to determine whether Keita's order of release on recognizance should be revoked or whether he should be released on bond during the pendency of removal proceedings against him. The government bears the burden of establishing by clear and convincing evidence that Sandhu is a flight risk or danger to the community. See *Antonio-Andres v. Mullin*, 2026 WL 2546997 (D. Neb. Aug. 28, 2026); *Ferrufino Guerrero v. Mullin*, 2026 WL 1679263 (D. Neb. June 10, 2026); *Sandhu v. Mullin*, 2026 WL 1146643 (D. Neb. Apr. 28, 2026).

**THEREFORE, IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Filing No. 1) is granted in part and denied in part.
2. The Federal Respondents shall provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge on or before November 2, 2026. At such a hearing, the government will be required to prove by clear and convincing evidence that Petitioner poses a flight risk or danger to the community.
3. If the Federal Respondents do not provide Petitioner with a bond hearing as required, Petitioner must be immediately released from detention.
4. On or before November 5, 2026, the Federal Respondents shall provide the Court with a status update regarding the bond hearing or, if no bond hearing was held, advise the Court regarding Petitioner's release.
5. A separate judgment will be entered.
6. The Clerk of Court is directed to mail a copy of this Memorandum and Order and accompanying Judgment to Petitioner at his address of record.

Dated this 21st day of October, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge